IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Lisa Marie Batten,<br><br>        Plaintiff,<br><br>v.<br><br>Grand Strand Dermatology, LLC,<br><br>        Defendant. | Case No.: 4:18-cv-0616-SAL<br><br><br>**OPINION AND ORDER** |

      This matter is before the Court on Defendant's Motion for Summary Judgment, ECF No. 28, filed on June 11, 2019. On December 20, 2019, in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02, United States Magistrate Judge Thomas E. Rogers, III issued a Report and Recommendation ("Report"), ECF No. 47, recommending that Defendants' motion be granted in its entirety. Plaintiff timely objected to the Report, and Defendants replied. *See* ECF Nos. 57, 59. For the following reasons, the Court overrules Plaintiff's objections, adopts the Report in its entirety, and grants Defendant's motion.

**I.    Background**

      Plaintiff Lisa Batten brings this action in connection with her employment with Grand Strand Dermatology, LLC, a medical practice with four dermatologists. She asserts claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.* ("Title VII"); the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"), the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* ("FLSA"), and the South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-10, *et seq.* ("SCPWA"). Plaintiff asserts that she was discriminated and

retaliated against because of her pregnancy and disability; that she was constructively discharged; and that she is owed wages for unpaid overtime and leave.

The factual history of this case as set forth in the Report is incorporated herein by reference. See ECF No. 52 at 1-9. In summary, Plaintiff rose to the position of Practice Manager in 2013, after working for Defendant for approximately five years. Her annual reviews were generally positive, but noted several deficiencies upon which the physicians in the practice requested improvement. Plaintiff requested that Defendant hire a subordinate to work under her because, as the parties appear to agree, Plaintiff's many responsibilities were often too much for her to manage on her own. Plaintiff's request for an assistant, however, was rejected. Drawing all inferences in Plaintiff's favor, the record suggests that Defendant initially selected her to manage the practice in part because paying her salary would be less expensive than paying that of a highly experienced manager. Plaintiff did not have the business management education or experience that Defendant would later seek.

In 2016, Plaintiff became pregnant, and she announced her pregnancy in August of that year. In the fall of 2016, Defendant finalized and executed a plan to hire a more qualified manager in parallel with plans to expand its operations. Defendant hired MaryNell Goolsby, a medical practice manager with more than twenty-five years' experience, on January 16, 2017. Plaintiff trained Goolsby for two weeks before Plaintiff's maternity leave began on February 1, 2017. Before she was to return on March 27, 2017, Plaintiff learned that her position would change. Specifically, Plaintiff's title would be changed from "Practice Manager" to "Office Manager"; she would be paid hourly instead of salaried (at a full-time rate equivalent to her salary with no opportunity to work overtime); and her responsibilities would be reduced. Plaintiff describes the shift as going from "top management" back to "front office." Plaintiff met with

Goolsby on March 24, 2017, and resigned due to the changes in her employment with Defendant. After resigning, Plaintiff expressed to physicians that she "felt disrespected upon the hiring of a new manager," and was "worried that [she] was already replaced and would be unemployed all because [she] chose to start a family." ECF No. 38-1.

With respect to Plaintiff's Title VII and ADA claims, the Magistrate Judge concluded that Plaintiff lacks direct evidence of discrimination and that Plaintiff's circumstantial evidence fails to show a genuine issue for trial. The Magistrate Judge further found that, while Plaintiff had engaged in protected activity when she expressed fear of losing her job because of her pregnancy, Plaintiff fails to show a causal connection between this activity and an adverse employment action sufficient for her retaliation claim to survive summary judgment.[1] Finally, the Report concluded that Plaintiff's claim under the SCPWA is preempted by the FLSA, and her FLSA claim for unpaid overtime fails because she is an exempt employee.

## II.     Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court

---

[1] Plaintiff does not specifically address the Report's recommendation concerning her retaliation claim, *see* ECF No, 57 at 13, and the Court therefore does not address it herein. The objection does not comply with Rule 72(b)(2), but merely states in conclusory fashion that "[t]here is a causal connection between Plaintiff's protected activities opposing pregnancy discrimination and her demotion," string-citing the material presented to the Magistrate Judge.

must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

In applying the foregoing standard, the Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this Court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court is charged with making a de novo determination of only those portions of the Report that have been specifically objected to, and the Court may accept, reject, or modify the Report, in whole or in part. 28 U.S.C. § 636(b)(1). In the absence of objections, the Court is not required to provide an explanation for adopting the Report and must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v.*

*Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (citing Fed. R. Civ. P. 72 advisory committee's note).

**III.    Discussion**

    **A.    The Record Contains no Direct Evidence of Discrimination Against Plaintiff.**

Plaintiff's first objection–that the Report "erred by finding that the direct evidence of discrimination in this case is insufficient for a jury trial"–mischaracterizes the Report. The Report did not find that direct evidence was insufficient; rather, it found that direct evidence did not exist in this case. The Court agrees.

A plaintiff alleging discrimination in violation of Title VII may proceed either with direct evidence of discrimination or through the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004). "[D]irect evidence of intentional discrimination is hard to come by." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 271 (1989) (O'Connor, J., concurring in the judgment). It must (1) reflect the alleged discriminatory attitude and (2) bear directly on the contested employment decision. Id. (citing Fuller v. Phipps, 67 F.3d 1137, 1142 (4th Cir. 1995). Direct evidence proves a fact without the need to draw any intermediate inference. *See, e.g.*, *Thomas v. Westinghouse Savannah River Co.*, 21 F. Supp. 2d 551, 555 n.6 (D.S.C. 1997) (noting, as an example of direct evidence of discrimination, a document stating, "discipline Thomas, she is black."), *aff'd in part, dismissed in part*, 162 F.3d 1155 (4th Cir. 1998); *see also Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990) (describing a hypothetical management memorandum saying, "[f]ire Earley—he is too old," as direct evidence).

Plaintiff contends that the following evidence constitutes direct evidence of discrimination: (1) Dr. Jones describing a "maternity leave problem" concerning Plaintiff's

approaching absence, *see* ECF No. 38-39, and (2) communications related to other employees' and candidates' age. *See* ECF Nos. 38-41, 38-42. First, the "maternity leave problem" described by Dr. Jones can only be reasonably construed to refer to Plaintiff's then-approaching absence. Plaintiff does not offer any argument to counter the Report's interpretation of this communication. Dr. Purvis' response belies the meaning of the "maternity leave problem" ascribed by Plaintiff: "Maybe we could find someone . . . who will work six weeks and fix things and then leave." ECF No. 38-39. Dr. Jones' statement is not direct evidence because it requires inference–an unreasonable one–to support a conclusion of unlawful discrimination against Plaintiff. Second, Plaintiff fails to show how the communications related to age provide direct evidence that she was subject to adverse employment action because of her pregnancy and/or disability. During the search for a more qualified practice manager, Dr. Jones noted he included candidates' years of experience "to give an idea of how old they might be." ECF No. 38-40. Defendant hired Goolsby, however, who (using Dr. Jones' proxy metric) was one of the older candidates for the position. In addition, Plaintiff offers no evidence of an adverse employment action in connection with Dr. Jones' expressed frustration that Defendants' older employees cost more to insure. In short, the evidence characterized by Plaintiff as "direct" does not bear directly on the challenged employment decision at issue in this case, or the evidence requires an inference to arrive at the conclusion Plaintiff wishes the fact finder to accept.

The Court is of the opinion that Plaintiff's proffered direct evidence is not direct in nature. She must proceed under the burden-shifting scheme in *McDonnell Douglas* to prove her discrimination claims.

### B.     Plaintiff Fails to Establish Pretext.

Plaintiff's second, third, and fourth objections all center on whether Plaintiff has adequately rebutted Defendant's lawful justification for its employment decisions concerning Plaintiff. The Court finds that Plaintiff's evidence, in the aggregate, fails to establish a genuine issue regarding pretext. No reasonable juror could find by a preponderance of the evidence that Defendant's motivation was based on anything other than a desire to hire a more qualified individual to manage and grow the practice.

Without direct evidence, a Plaintiff alleging discrimination in violation of Title VII may proceed under the *McDonnell Douglas* burden-shifting scheme. Under this scheme, after the plaintiff has made out a *prima facie* case, it is incumbent on the defendant to offer a "legitimate, nondiscriminatory reason" for its challenged employment action. *Lettieri v. Equant Inc.*, 478 F.3d 640, 646 (4th Cir. 2007) (quoting *Hill*, 354 F.3d at 285)). If the defendant submits a legitimate, nondiscriminatory reason, the ultimate burden shifts back to the plaintiff to demonstrate that "the legitimate reasons offered . . . were a pretext for discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). The fact finder may consider evidence supporting the plaintiff's *prima facie* case when evaluating the question of pretext. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 n.10 (1981). "Although the temporal proximity between the employer learning of the plaintiff's pregnancy and her termination may support a plaintiff's claim of pretext, such evidence—without more—is insufficient." *Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 968 (5th Cir. 2016).

The Court is unable to find, on the record before it, that Plaintiff has sufficiently demonstrated the pretextual nature of Defendant's proffered justification–that she was underqualified–for taking arguably adverse employment action against Plaintiff. Plaintiff argues

7

that she had a categorically "positive employment record" and that Defendant "was satisfied with Plaintiff *until* she became pregnant." ECF Nos. 38 at 1, 57 at 6. The record does not bear Plaintiff's contention, and, even if it did, this temporal causation argument would remain insufficient.

Plaintiff's evaluations, made prior to her pregnancy announcement, are generally positive. *See* ECF Nos. They do, however, note concerns that are wholly consistent with Defendant's later refined and executed plan to hire a more qualified manager. In 2015, Dr. Glover stated, "I sometimes feel she needs an assistant or at least some doctors/staff to delegate tasks to." ECF No. 38-3 at 3. Dr. Jones believed that certain aspects of the job "may have been beyond the scope of what could be expected of a single practice manager to have a firm grasp of." *Id.* "There is a general sense that perhaps there is too much to manage for one person, to the point where there is concern that items of concern for the practice and the physicians are not being addressed in a timely manner." *Id.* Dr. Purvis requested "a more consistent physical presence during working hours" and noted that "there have been many gaps in the [appointment] schedule." *Id.* at 3-4. Dr. Skvarka sought improvement from Plaintiff "in the practice managing side including timely accounting, negotiating contracts, and implementation of IT plans." *Id.* at 4. Plaintiff's 2016 review noted overall improvement, and noted Plaintiff "has the most difficult job since there are a lot of tasks that have to be prioritized." ECF No. 28-3 at 3. Physicians requested more physical presence in the office, less social media use during work, better contract negotiation, and more efficiency in running business meetings. *Id.* Dr. Purvis also alluded to the need to prevent another "overtime fiasco," *id.*, during which Defendant paid overtime at two and one-half times the normal hourly rate, in excess of the FLSA's requirement. *See* Pl. Dep., ECF

8

No. 28-10 at 31:4-24. After leaving her employment with Defendant, Plaintiff acknowledged that she "struggled in certain areas." ECF No. 38-1 at 2.

Wholly consistent with these constructive criticisms–all of which were given prior to Plaintiff's announcement that she was pregnant–Defendant began to formalize a plan to hire a manager with "a lot more experience than our current manager," "an MBA type," a "business educated manager." ECF No. 38-42 at 2. The record reveals that throughout the search for a new manager, no one derided Plaintiff based on her pregnancy or imminent motherhood. Those considerations appear to have countenanced against taking any adverse employment action against Plaintiff: "firing Lisa flat out would feel wrong personally no matter what, but especially while quickly approaching maternity leave." ECF No. 38-21 at 2.

Plaintiff's contention that only after she announced her pregnancy did Defendant form its justification–and that its justification is thereby pretextual–does not form the basis of a genuine issue considering the foregoing. The totality of the circumstances at issue in this case otherwise requires the building of inference upon inference to support a claim of discrimination, and Defendant is entitled to summary judgment, having provided an unrebutted nondiscriminatory reason for taking arguably adverse employment action against Plaintiff.

    **C.    A Genuine Issue of Fact Exists with Respect to Whether Plaintiff Suffered Adverse Employment Action.**

Plaintiff's fifth objection appears to misunderstand the Report. She submits that the Magistrate Judge "improperly gave the benefit of inserting legal arguments for Defendant when the moving party did not sufficiently raise grounds for dismissing Plaintiff's demotion claim." ECF No. 57 at 12. The Report does not, however, appear to fashion a legal argument for Defendant and did not recommend dismissing any demotion claim.

9

First, Plaintiff's "demotion claim" is not a claim, but equates to an "adverse employment action" for purposes of her discrimination and retaliation claims. The Report concluded that a genuine issue of fact *does* exist regarding whether Plaintiff's "demotion," *i.e.*, altered job title, compensation structure, and change in responsibilities qualify together as an adverse employment action. *See* ECF No. 52 at 11 ("These facts are sufficient to create an issue of fact as to whether Plaintiff suffered an adverse employment action.").[2] The quoted portion of the Report to which Plaintiff lodges this objection actually construed Defendant's argument in her favor: "Defendant appears to assume the existence of a prima facie case . . . ." ECF No. 52 at 16. Because the Court is unable to identify how the Report impermissibly fashions an argument for Defendant that it has not made, Plaintiff's objection on this point is overruled.

### D.     As a Matter of Law, Plaintiff was not Constructively Discharged.

In Plaintiff's seventh objection, she submits that a question of fact exists as to whether she was constructively discharged from employment. A thorough review of the record demonstrates Defendant's entitlement to summary judgment on this issue.

The constructive discharge doctrine "contemplates a situation in which an employer discriminates against an employee to the point such that his 'working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'" *Green v. Brennan*, 136 S. Ct. 1769, 1776 (2016) (quoting *Pennsylvania State Police v. Suders*, 124 S. Ct. 2342, 2351 (2004)). The doctrine is "open to abuse by those who leave employment of their own accord," and the Fourth Circuit has therefore "insisted that it be carefully cabined." *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 187 (4th Cir. 2004) (quoting *Paroline v. Unisys Corp.*, 879 F.2d 100, 114 (4th Cir.1989)). Whether working

---

[2] Plaintiff's eighth "objection"–that "[t]he demotion should be a jury determination[,]" ECF No. 57 at 15, similarly misunderstands the recommendation of the Report, and is summarily resolved herein.

conditions are intolerable turns on "whether a reasonable person in the employee's position would have felt *compelled* to resign, . . . that is, whether he would have had *no choice* but to resign." *Evans v. Int'l Paper Co.*, 936 F.3d 183, 193 (4th Cir. 2019) (emphasis in original) (internal citations and quotations omitted). Difficult or unpleasant working conditions alone cannot substantiate an allegation of constructive discharge. *Id.* Being yelled at and told you are a poor manager and chastised in front of customers is insufficient, *Williams v. Giant Food, Inc.*, 370 F.3d 423, 434 (4th Cir. 2004), as is being ignored by co-workers and top management. *Munday v. Waste Mgmt. of N. Am.*, 126 F.3d 239, 244 (4th Cir. 1997). While a "[d]emotion can constitute constructive discharge, especially where the demotion is essentially a career-ending action or a harbinger of dismissal," *Carter v. Ball*, 33 F.3d 450, 459 (4th Cir. 1994) (citation omitted), a "'slight decrease in pay coupled with some loss of supervisory responsibilities' is insufficient evidence of constructive discharge." *Id.* (quoting *Jurgens v. EEOC*, 903 F.2d 386, 392 (5th Cir. 1990)).

The aggregate of Plaintiff's evidence fails to show how a reasonable jury could conclude that Plaintiff's resignation was the result of actions so intolerable that a reasonable person would feel they had no choice but to resign. In support of her position, Plaintiff cites her own letter to Drs. Purvis, Jones, Skvarka, and Glover, in which she states, "[n]o one should ever end up forced out of their job after returning from maternity leave." ECF No. 38-1 at 3. The circumstances precipitating Plaintiff's departure are not so intolerable that a jury could believe the premise of this statement. Plaintiff was to earn nearly the exact same income, albeit hourly instead of on a salary. She would not be able to work overtime, but, where she claims to have worked fifty to sixty hours per week while she was salaried, her hourly income would have arguably increased. Plaintiff's change in responsibilities similarly cannot persuade a jury that a reasonable person in

11

her position would have felt compelled to resign. Finally, Plaintiff refers to physicians' conversations contemplating her termination; however, she was not terminated, and the factual circumstances confronting her when she resigned are insufficient to support a constructive discharge claim.

      **E.     Plaintiff Fails to Adduce Facts Sufficient to Survive Summary Judgment Concerning her SCPWA Claim.**

Plaintiff's ninth objection to the report contends that Plaintiff's SCPWA claim must survive because, although her overtime wages claim is preempted by the FLSA, her claim for banked paid leave is not. In the Report, the Magistrate Judge concluded that summary judgment was appropriate with respect to this claim where Plaintiff "failed to present evidence sufficient to create an issue of fact." ECF No. 52 at 23. Plaintiff's objection fails to demonstrate the impropriety of this conclusion, where it too cites nothing in the record. Under Rule 56(c)(1)(A) of the Federal Rules of Civil Procedure, when a party wishes to establish a fact issue, it must cite "particular" portions of the record. The Court need consider only the materials cited. Fed. R. Civ. P. 56(c)(3). In addition, where a party objects to a magistrate judge's recommendation, the objection must be made with specificity. Fed. R. Civ. P. 72(b)(2). Having failed to carry its burden, Plaintiff's objection regarding her SCPWA claim is overruled.

      **F.     Plaintiff was an Exempt Employee Under the FLSA.**

Finally, Plaintiff asserts that she was not an exempt employee and that she was therefore entitled to payment for overtime under 29 U.S.C. § 207(a)(1). The record, however, establishes the lack of a genuine issue on this question, and the materials she cites are insufficient to carry her burden in response to Defendant's showing.

In general, an employer must compensate an employee for hours worked in excess of forty per week at a rate of one and one-half times the employee's normal rate. *See* 29 U.S.C. §

207(a)(1). Employees "employed in a bona fide executive, administrative, or professional capacity" are exempt from this requirement. 29 U.S.C. § 213(a)(1). Regulations promulgated by the Department of Labor interpreting this exemption state that an employee must (1) earn at least $455 per week, (2) have authority over hiring and firing, (3) routinely supervise at least two other employees, and (3) have the primary duty of management of the enterprise in which the employee is employed. 29 C.F.R. § 541.100(a). [3]

Citing portions of Plaintiff's deposition, the Report concluded that Plaintiff was an exempt employee. ECF No. 52 at 25. In her objection to this conclusion, Plaintiff asserts that she regularly worked in excess of forty hours per week; that she questioned her salary as it related to the FLSA; that she was not "highly paid"; that MaryNell Goolsby was hired at a rate that exceeded Plaintiff's; and that Goolsby resigned because of concerns over working overtime. ECF No. 57 at 17. These contentions may be true, but even assuming their truth, Plaintiff's FLSA claim still fails unless she can show that she was not an exempt employee under 29 C.F.R. § 541.100(a).

In further support of her objection, Plaintiff cites an email concerning her income, *see* ECF No. 38-37, which clearly shows that she satisfied the salary prong of the exemption. Plaintiff also refers to her own 2016 employee review, *see* ECF No. 38-2, in support of the proposition that she did not make management decisions and did not have authority to hire and fire employees. This conclusion is not a reasonable inference to draw from the material cited. At

---

[3] The Report discusses the implementation and subsequent invalidation of a higher salary threshold that became effective on December 1, 2016. *See* ECF No. 52 at 24 n.5. The Department of Labor has since amended 29 C.F.R. § 541.100(a)(1) to increase the minimum weekly salary threshold to $684 per week, effective January 1, 2020. This amendment does not appear to have retroactive applicability, *see Blake v. Broadway Servs., Inc.*, No. CV SAG-18-0086, 2020 WL 1675954, at *3 n.3 (D. Md. Apr. 6, 2020), and the Court applies the $455 threshold applicable throughout Plaintiff's employment. *See Thomas v. Dolgencorp, Inc.*, No. 3:10-CV-1061, 2012 WL 1110078, at *3 (D.S.C. Apr. 3, 2012) (discussing pre- and post-2004 regulations).

13

most it shows that Plaintiff was, despite her managerial responsibilities noted in the Report, still subject to review by the physicians who owned the practice she managed. Plaintiff testified that one hundred percent of her job was managerial. Pl. Dep., ECF No. 28-10 at 187:1-11. Doctor's referred to Plaintiff as the singular "manager" of the practice. *E.g.*, ECF No. 38-21 at 2. Plaintiff's cited evidence does nothing to show a genuine issue over whether she had the requisite level of authority over hiring and firing decisions as described in the Report. After reviewing the Report de novo in light of Plaintiff's objections regarding her FLSA claim, the objections are overruled.

## IV.   Conclusion

After a thorough review of the Report, the parties' objections, and the record in this case in accordance with the applicable standard, the Court adopts the Report, ECF No. 52, in its entirety. Accordingly, Defendant's Motion for Summary Judgment, ECF No. 28, is GRANTED, and Plaintiff's claims are DISMISSED with prejudice.

       IT IS SO ORDERED.

/s/Sherri A. Lydon  
Sherri A. Lydon  
United States District Judge

May 14, 2020

Florence, South Carolina